**CASE NO. 24-1568**

---

**United States Court of Appeals for
The Fourth Circuit**

---

**TERRANCE REEVES,**

*Plaintiff-Appellant,*

**vs.**

**LLOYD J. AUSTIN, III, SECRETARY U.S.
DEPARTMENT OF DEFENSE, ET. AL,**

*Defendant-Appellee.*

*On Appeal from the United States District Court
for the Eastern District of Virginia*

*Case No. 1:23-cv-01149 (Hon. Anthony J. Trenga, Judge)*

---

**OPENING BRIEF OF PLAINTIFF-APPELLANT**

---

Andrew Omar Clarke
District Legal Group, PLLC
163 Waterfront Street, Suite 440
National Harbor, MD 20745
Tel: 202-780-9144
Email: aclarke@districtlegalgroup.com
*Counsel for Plaintiff-Appellant*

January 17, 2025

## <u>DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1,

Plaintiff-Appellant Terrance Reeves makes the following disclosure:

i.   Is party/amicus a publicly held corporation or other publicly held entity?

No.

ii.  Does party/amicus have any parent corporations? If yes, identify all parent corporations, including grandparent and great-grandparent corporations.

No.

iii. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? If yes, identify all such owners.

No.

iv.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  If yes, identify entity and nature of interest.

No.

v.    Is party a trade association? (amici curiae do not complete this question) If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member.

No.

vi.  Does this case arise out of a bankruptcy proceeding? If yes, identify any trustee and the members of any creditors' committee.

No.

Date: 1/17/25          <u>/s/ Andrew O. Clarke, Esq.</u>, Attorney for Terrance Reeves

ii

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT ...................................................................ii

TABLE OF CONTENTS……………………………………………………… iii

TABLE OF AUTHORITIES ...................................................................iv

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................2

STATEMENT OF THE CASE ................................................................2

FACTUAL BACKGROUND ...................................................................3

PROCEDURAL HISTORY ....................................................................11

SUMMARY OF ARGUMENT ...............................................................12

STANDARD OF REVIEW ....................................................................12

ARGUMENT ......................................................................................14

I.      The District Court erred in dismissing Mr. Reeve's claim of discrimination. Viewing the evidence and drawing all reasonable inferences in a light most favorable to Mr. Reeves, the Defendant's Motion to Dismiss should have been denied ........................................................................................14

II.     The District Court erred granting Summary Judgment and dismissing Mr. Reeve's claim for retaliation. Viewing the evidence and drawing all reasonable inferences in a light most favorable to Mr. Reeves, the Defendant's Motion for Summary Judgment should have been denied ...............................................19

III.    The District Court erred granting Summary Judgment and dismissing Mr. Reeve's claim for hostile work environment. Viewing the evidence and drawing all reasonable inferences in a light most favorable to Mr. Reeves, the Defendant's Motion for Summary Judgment should have been denied ........23

CONCLUSION ................................................................ 30

REQUEST FOR ORAL ARGUMENT.................................. 30

CERTIFICATE OF COMPLIANCE ................................... 32

## TABLE OF AUTHORITIES

### Cases

*Alvarado v. Board of Trustees of Montgomery Community College*,
848 F.2d 457 (4th Cir.1988) …………………………………………... 16

*Aka v. Washington Hosp. Ctr.,*
156 F.3d 1284 (D.C. Cir. 1998) ........................................... 13

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986) ...................................................... 13,14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .......................................................... 12

*Bing v. Brivo Sys., LLC,*
959 F.3d 605 (4th Cir. 2020) .............................................. 16

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) .......................................................... 14

*Cummings v. Dep't of the Navy,*
279 F.3d 1051 (D.C. Cir. 2002) ........................................... 13

*EEOC v. Sunbelt Rentals, Inc.*
521 F.3d 306 (4th Cir. 2008)................................................ 20

*Garnett v. Remedi Seniorcare of Virginia, LLC,*
892 F.3d 140 (4th Cir. 2018)................................................ 12

*Jalmiran v. Alutiiq Commercial Enterprises, LLC,*
639 F. Supp. 3d 605 (E.D. Va. 2022) ................................................... 16

*Jenkins v. McKeithen,*
395 U.S. 411 (1969) .................................................................. 13

*Laughlin v. Metro. Washington Airports Auth*.,
149 F.3d 253 (4th Cir. 1998) ........................................................ 19

*McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*,
780 F.3d 582 (4th Cir. 2015) ........................................................ 16

*McIver v. Bridgestone Ams., Inc*.,
 42 F.4th 398 (4th Cir. 2022) ................................................... 19, 24

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) .................................................................. 15

*Nnadozie v. Genesis Healthcare Corp.*
730 F. App'x 151 (4th Cir. 2018)…………………………………………………….20

*Ousley v. McDonald,*
648 F. App'x 346 (4th Cir. 2016) ..................................................... 21

*Rasul v. Myers,*
512 F.3d 644 (D.C. Cir. 2008) ....................................................... 13

*Reeves v. Sanderson Plumbing Prods., Inc.,*
530 U.S. 133 (2000) .................................................................. 14

*Strothers v. City of Laurel,*
895 F.3d 317 (4th Cir. 2018) ........................................................ 19

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ................................................................. 16

## Statutes

28 U.S.C. § 1291 ................................................................ 2

28 U.S.C. § 1331 ................................................................ 2

42 U.S.C. § 2000 et seq. 1, 14, 38 .......................................1, 3

## Other Authorities

Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") . ...........................1

Fed. R. Civ. P. 8 .............................................................. 13

Fed. R. Civ. P. 12(b)(6) ...................................................... 12

Fed. R. Civ. P. 56 (a) .........................................................13

Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000 et seq. ("Title VII") .................................. 1,3

Title VII of the Civil Rights Act of 1964,
as amended, 42 U.S.C. § 2000(e) et seq ...................................1

## JURISDICTIONAL STATEMENT

Pursuant to Federal Rule of Appellate Procedure 28(a)(4) and Rule 28(a), Plaintiff-Appellant Terrance Reeves ("Mr. Reeves" or "Appellant") makes the following statement concerning jurisdiction.

<u>Basis for District Court Jurisdiction</u>.  This case is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII") , specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq*.; and the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), to redress and enjoin employment practices of the Defendant for the conduct of the Defendant-Appellee, Lloyd J. Austin III, in his official capacity as Secretary, U.S. Department of Defense, ("DoD" or "Defendant-Appellee DoD"), and Vice Admiral Frank D. Whitworth, Director, National Geospatial Intelligence Agency ("NGA" or "Defendant-Appellant NGA") for Defendants' unlawful discrimination based on race (African American), hostile work environment, and retaliation, including, but not limited to, the Defendants' unlawful and discriminatory preference and treatment of Caucasian employees, which resulted in adverse employment and personnel actions, against African-American employees, like Plaintiff-Appellant; as well as retaliating against Plaintiff-Appellant for his statutorily-protected activity. Accordingly, the District Court had

subject matter jurisdiction of Appellant's discrimination complaint pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction).

Basis for Court of Appeals Jurisdiction. This Court has jurisdiction of the appeal from the final decision of the District Court pursuant to 28 U.S.C. § 1291. The District Court issued a Final Order granting summary judgment on May 20, 2024.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the District Court Judge erred when it dismissed Count I, for Unlawful Discrimination, where it failed to view the evidence and draw all reasonable inferences in a light most favorable to Mr. Reeves.

2. Whether the District Court Judge erred by granted Summary Judgment as to Count II, for Hostile Work Environment, where it failed to view the evidence and draw all reasonable inferences in a light most favorable to Mr. Reeves.

3. Whether the District Court Judge erred where granted Summary Judgment to Count III, for Retaliation, where it failed to view the evidence and draw all reasonable inferences in a light most favorable to Mr. Reeves.

## STATEMENT OF THE CASE

Plaintiff Terrance Reeves ("Plaintiff," or "Reeves") is appealing the decision from The United States District Court for the Eastern District of Virginia. In the lower Court, Plaintiff alleged that during his tenure serving as the Chief Privacy

Officer at the Privacy and Civil Liberties Division (the "PCLD") of the National Geospatial-Intelligence Agency (the "NGA"), an agency within the United States Department of Defense, he experienced (1) adverse employment actions based on racial discrimination (Count I), (2) a hostile work environment (Count II), and (3) retaliation for his reporting the alleged discrimination (Count III). [JA0010].

On appeal, plaintiff is seeking a reversal decision, seeking compensatory damages for lost wages and reputational harm, as well as declaratory and injunctive relief, from Defendants Lloyd J. Austin III ("Austin"), Secretary of the Department of Defense, and Frank D. Whitworth ("Whitworth"), Director of the NGA, (collectively, "Defendants") in their official capacities under a theory of *respondeat superior*.

## **FACTUAL BACKGROUND**

Plaintiff brings this action as a result of the discrimination, harassment and disparate treatment on the basis of race (African American) and reprisal (prior EEO activity) that he was subjected to by Defendants, which resulted in a hostile work environment because of his protected characteristics. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII").[JA0060], [JA0982].

During the relevant period of this Complaint, Plaintiff was the Chief MOCP, and Chief Privacy Officer ("CPO"), Pay Band 4, from July 2019 to January 29, 2021, in the NGA's MOC in Springfield, Virginia. Based upon his race and prior

EEO activity, Plaintiff was subjected to harassment and disparate treatment by his immediate supervisors, MOC Deputy Director (DD/MOC) Gregory A. Gondeck (Caucasian, male), and MOC Director (D/MOC) Kevin P. Cichetti (Caucasian, male). [JA0068].

Beginning on or about July 2019, through on or about January 29, 2021, Plaintiff was subjected to race-based discrimination and harassment through bullying behavior, direct and indirect harassment, and the display of inappropriate pictures, creating a hostile work environment different than the treatment received by other division chiefs not of his race. [JA0014], [JA0889], [JA0982].

Plaintiff began work at the NGA in July 2019 as the Chief of the Privacy and Civil Liberties Division with the Office of Mission Oversight and Compliance. [JA0014]. Plaintiff had worked for the federal government for fifteen (15) years. Three (3) weeks after starting his position, Plaintiff had a meeting with Mr. Gondeck and Mr. Cichetti to discuss the history of the position and program. [JA0889], [JA0982]. During the meeting, Mr. Cichetti and Mr. Gondeck informed Plaintiff of an active  EEOC case against them from a former employee (Non-Caucasian) and threaten that if Plaintiff filed a case that they would fire him. [JA0889], [JA0982]. In addition to the information about the case, Mr. Cichetti describe the former lead of the program, an African American Man, as an aggressive individual. [JA0889], [JA0982]. Mr. Cichetti stated that the two had a constant hostile relationship and

4

forbid the Plaintiff to communicate with either employee. [JA0982]. Mr. Cichetti provided additional statements on how if he could have the form lead, an African American man, fired and removed from the building. [JA0982]. Both stated that all they see is the current team members working on some excel spreadsheet that had no value. [JA0889], [JA0982].

In or around August 2019, Plaintiff attended an offsite event with Mr. Gondeck and Mr. Cichetti, the division chiefs. [JA0988]. Mr. Gondeck, Mr Cichetti, and all the other divisions were comprised mostly, if not all, Caucasian individuals. [JA0988]. Further, Plaintiff overheard Mr. Gondeck and Mr. Cichetti, and the contractors speak about how they did not know what the employees of the Privacy and Civil Liberties Division did "outside of working on an excel spreadsheet." [JA0988]. In or around September 2019, Plaintiff met with Mr. Cichetti and Mr. Cichetti showed Plaintiff a photo of his new AR-15 rifles. [JA0988], [JA0986].

Unprompted, and unprovoked, Mr. Cichetti shared a story about threatening an African American man with his gun after the man had walked into his yard. [JA0988], [JA0986]. Mr. Cichetti also told Plaintiff that when he was young, a group of African American boys had beat him up and "left him for dead." [JA0988], [JA0986]. Mr. Cichetti stated that this had resulted in him viewing African Americans differently. [JA0988], [JA0986]. In or around October 2019, Mr. Gondeck and Mr. Cichetti informed Plaintiff that they were concerned he was not

5

meeting his performance objectives. [JA0989]. When Plaintiff asked what he could improve on, he was told that his team was missing deadlines, the work product was poor, and communication between team members needed to improve. [JA0989] Plaintiff explained that because he and his team were new, it would take time to acclimate. [JA0989].

In or around October 2019, Plaintiff received an invitation from Mr. Cichetti to attend a Halloween party at his home. [JA0989]. Plaintiff soon learned, however, that he was the only person of his team to be invited. [JA0989]. When Plaintiff inquired with Mr. Cichetti if he planned on inviting the rest of the team, Mr. Cichetti stated that he did not think members of the Privacy and Civil Liberties Division would feel comfortable about White people dressing up in drag, or words to that effect. [JA0989]. Almost all personnel who worked for Mr. Cichetti were at the party except the three (3) minority individuals who were not invited. [JA0989].

On or about February 7, 2020, Mr. Gondeck and Mr. Cichetti asked to meet with Plaintiff. [JA0017], [JA0986], [JA0990], [JA0994]. At the meeting, Mr. Gondeck expressed that Plaintiff's choice to wear sneakers was not professional, despite the fact that Plaintiff adhered to the dress code during meetings and other formal settings. [JA0017], [JA0986], [JA0990], [JA0994]. Mr. Gondeck and Mr. Cichetti informed Plaintiff of a new dress code. [JA0017], [JA0986], [JA0990], [JA0994]. When Plaintiff inquired as to whether the other (White) division chiefs would

receive a similar meeting, Mr. Gondeck and Mr. Cichetti stated that the meeting was specific to Plaintiff. [JA0017], [JA0986], [JA0990], [JA0994]. After the meeting, the new dress code was emailed by Mr. Cichetti. [JA0017], [JA0986], [JA0990], [JA0994].

On or about February 9, 2020, Mr. Gondeck and Mr. Cichetti held another meeting with Plaintiff. [JA0986]. At this meeting Plaintiff was informed that a contractor on his team had put in her two weeks' notice. [JA0986]. Plaintiff was further informed that this was the second contractor who had left "because of" Plaintiff. [JA0986]. Plaintiff was confused as the contractor informed the Plaintiff of her decision to look for federal employment and get out of the contracting role [JA0986]. When Plaintiff asked for confirmation that the contractor had stated Plaintiff was the reason for her leaving, Mr. Gondeck began to yell and ball up his fists and hit aggressively on the table in front of the Plaintiff. [JA0986]. At this point, Plaintiff became frightened by the aggression Mr. Gondeck was displaying, requested to be allowed to leave the meeting, and he decided he would begin staying away from Mr. Gondeck for fear of his life. [JA0986]. The following day, the Plaintiff informed the Agency's Executive Director's Chief of Staff of the incident and was encouraged to file an informal Complaint. [JA0986].

On or about May 29, 2020, Plaintiff had his scheduled midpoint review. [JA0017], [JA0990]. Contrary to practice and procedure, however, Mr. Cichetti was

present for the review. [JA0017], [JA0990]. When Plaintiff inquired as to whether Mr. Cichetti was present for all Division Chiefs' reviews, Mr. Gondeck stated that Mr. Cichetti was only attending Plaintiff's review. [JA0017], [JA0990]. During Plaintiff's midpoint review, Mr. Cichetti begins to yell that he has the right to be in the meeting. The Plaintiff for a third party in attendance due to the fear of Mr. Gondeck. On or about July 28, 2020, Plaintiff reported the aggression incident to the NGA's Diversity and Inclusion Office. [JA0017], [JA0990]. Plaintiff informed them of the disparate treatment he was subjected to by Mr. Gondeck and Mr. Cichetti and the hostile work environment that resulted. [JA0017], [JA0990]. Plaintiff felt that submitting a formal complaint or entering into an alternative dispute resolution proceeding would make his situation worse, and so he chose to wait a bit longer before filing a formal Complaint. [JA0017], [JA0990].

Finally, on or about October 5, 2020, Plaintiff finally chose to file a formal complaint against Mr. Gondeck and Mr. Cichetti for their discriminatory treatment. [JA0069]. Plaintiff had previously made an informal complaint on August 7, 2020. [JA0069]. Shortly after filing the complaint, and at the end of Plaintiff's performance period, he provided Mr. Gondeck with his self-assessment that included various accomplishments and projects that had succeeded throughout the year. [JA0069]. On or about October 28, 2020, Plaintiff received his FY20 Final Close Out performance rating from Mr. Gondeck that rated Plaintiff as a "1.0 –

Unacceptable" despite the fact that each member of Plaintiff's team had received a rating of "Excellent." [JA0090], [JA0244-0245]. Based on reason, belief, and timing, this was Mr. Gondeck and Mr. Cichetti's retaliation for Plaintiff's EEO complaint submitted earlier that month. [JA0090], [JA0244-0245]. Plaintiff immediately reported the retaliation to the EEO office. [JA0090], [JA0244-0245].

On or about January 29, 2021, Plaintiff's nephew received an overnight letter that served as a Notice of Termination During Trial Period dated January 15, 2021. [JA0018].

The termination was sent via overnight mail and was dated January 28, 2021. [JA0018]. The termination was dated the same day that Plaintiff had informed Defendant that he would be accepting a new job with the Department of Veterans Affairs. [JA0018]. The Department of Veterans Affairs emailed NGA requesting the agency to provide documents to process the Plaintiff for the new position. [JA0018]. Based on reason, belief, and timing, this was Mr. Gondeck and Mr. Cichetti's retaliation for Plaintiff's ongoing EEO activity and advocacy. [JA0018]. All of the above instances are evidence of the consistent discriminatory, harassing, and retaliatory treatment that Plaintiff faced at the hands of Defendants' representatives for no reason other than his protected characteristics. [JA0019], [JA0198]. The more Plaintiff spoke up about the treatment he was facing, the more he was subjected to a hostile work environment and retaliation. [JA0019], [JA0198].

In contrast to Plaintiff, other employees not of his protected categories have received more favorable treatment and have not been subjected to the same harassment and discrimination: Ms. Deborah Pyle (Caucasian, White, female) was a Band 5 employee working under Mr. Cichetti as well. [JA0197]. In FY20, Ms. Pyle had a limited workload and yet no administrative actions were taken against her. [JA0198]. She also had an encounter with contractor Mike Bietsch which only resulted in an administrative notice. [JA0198]. Further, from March 2020 to January 2021, the majority of Ms. Pyle's weekly activity reports highlighted reading books and research while Plaintiff's weekly reports highlighted achievements and contributions to the program. [JA0198]. Ms. Pyle was not subjected to the same performance scrutiny as Plaintiff. [JA0198]. From March 2020 to September 2020, Plaintiff and his team were the only team producing work during the start of the pandemic. [JA0198]. In January 2020, Plaintiff moved all of the unclassified documents to a location that would allow his team to work virtually. [JA0198]. This effort resulted in a verbal reprimand from Mr. Gongdeck. [JA0198]. However, in March 2020, the COVID-19 pandemic resulted in the necessity for virtual work. Plaintiff's plan for his team was then implemented Agency wide. [JA0198].

## PROCEDURAL HISTORY

Mr. Reeves timely filed a formal internal complaint of discrimination with the Agency on or about October 23, 2020, alleging racial discrimination (Agency

Case No. NGA-0045-2020). Plaintiff amended his complaint on or around November 24, 2020, including allegations of reprisal based upon his prior EEO activity. He again amended his complaint on or about January 29, 2021, to include further incidents of discrimination based on reprisal due to his Notice of Termination During Trial Period, received on or about January 29, 2021. Plaintiff requested a hearing of his case before the EEOC on or about April 21, 2021 (EEOC Case No. 570-2021-00849X).

On April 19, 2023, the EEOC issued a Decision and Order Entering Judgment, and on May 4, 2023, the Agency issued its Final Agency Order and notice of Plaintiff's right to appeal or file a civil action.

On July 13, 2023, Plaintiff filed a Complaint in U.S. District Court for the Eastern District of Virginia. Defendant filed a Motion to Dismiss all of Plaintiff's claims. On December 19, 2023, the Court granted Defendant's Motion as to Count I (Discrimination) and denied as to Counts II (hostile work environment) and III (retaliation). Subsequently Defendant filed a Motion for Summary Judgment as to Plaintiff's remaining claims. On May 20, 2024, the Court issued an order granting Summary Judgment as to Plaintiff's claims for hostile work environment and retaliation.

## SUMMARY OF ARGUMENT

Appellant is appealing the District Court's ruling on the motion to dismiss for discrimination, and on the motion for summary judgment for retaliation and hostile work environment. Appellant has met the burden of stating a claim and proving a prima facie case for discrimination. Appellant has successfully met its burden for retaliation and hostile work environment. The Court failed to view the evidence and draw all reasonable inferences in a light most favorable to Appellant. The Court should have denied Defendant's Motion to Dismiss and Motion for Summary Judgment.

## STANDARD OF REVIEW

### I.    Motion to Dismiss

The Court of Appeals' review of a grant of a motion to dismiss for failure to state a claim is … reviewed *de novo*." *Garnett v. Remedi Seniorcare of Virginia, LLC*, 892 F.3d 140, 142 (4th Cir. 2018). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must accept the material facts alleged in the complaint as true and in the light most favorable to the plaintiff . . . *Id.* at 679.

12

In reviewing a motion to dismiss, "the claims must be construed in the light most favorable to the non-moving party and its allegations taken as true." *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969). Moreover, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8.*

## II.    Summary Judgment

The Court of Appeals' review of a grant of summary judgment is *de novo*, applying the same standard that the District Court was required to apply. *Rasul v. Myers*, 512 F.3d 644 (D.C. Cir. 2008) ("We review the district court's legal conclusions de novo.") (*citing Cummings v. Dep't of the Navy*, 279 F.3d 1051,1053 (D.C. Cir. 2002)). Summary judgment is warranted if, from the totality of the evidence, it appears that no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C. Cir. 1998). The Court must view the evidence, draw all reasonable inferences therefrom, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

13

together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Neither the District nor the Court of Appeals may resolve disputed facts, nor weigh the evidence, nor make determinations of credibility. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## **ARGUMENT**

I.    **The District Court erred in dismissing Mr. Reeve's claim of discrimination. Viewing the evidence and drawing all reasonable inferences in a light most favorable to Mr. Reeves, the Defendant's Motion to Dismiss should have been denied.**

The District Court held that Appellant did not meet his burden. The Court found that Mr. Reeves failed to allege facts that plausibly allege any nexus between the alleged discrimination and any adverse employment actions. [JA0035]. However, the Courts ruling only relies on Paragraph 37, addressing Mr. Reeves' performance review, and Paragraph 39, addressing Mr. Reeves' termination, to support its decision that the adverse action alleged only applied to Mr. Reeves' claim for Retaliation, and that they were not a part of Mr. Reeves' discrimination claim as well. [JA0035]. Paragraph 40 of Appellant's Complaint states that "all of the above statements apply to discrimination, hostile work environment and retaliation."

14

Plaintiff's claim for discrimination therefore included all of the discriminatory acts alleged throughout the Complaint in Paragraphs 23 to 39. [JA0010].

It suffices to say that Plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated against Plaintiff. Here, the negative performance feedback Mr. Reeves received prior to the performance review was part of the discrimination that was happening at the agency [JA0011- 0012]. The District Court erroneously concluded Plaintiff did not meet his burden of providing a prima facie case of discrimination by quoting only several lines of the Plaintiff's Complaint. [JA0035]. Plaintiff successfully alleged facts that plausibly present a fact finder the nexus between the alleged discrimination and all of the adverse discriminatory actions that occurred before the October 2020 year-end performance review and January 2021 termination. [JA0010].

In order to establish a prima facie case for discrimination case under Title VII a claimant must show that: (1) he belongs to a protected class; (2) he was performing according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) other employees with qualifications similar to his own were treated more favorably. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

At the motion to dismiss stage, an employment discrimination plaintiff is not required to plead a prima facie case. See *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616-17 (4th Cir. 2020) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

Instead,the plaintiff is merely "required to allege facts to satisfy the elements of a cause of action created by  that statute." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

The purposes of this requirement include putting the charged party on notice of the complaint and allowing the EEOC to attempt reconciliation. *See Alvarado v. Board of Trustees of Montgomery Community College*, 848 F.2d 457, 460 (4th Cir.1988).At the motion to dismiss stage, a Title VII employment discrimination plaintiff is not required to plead a prima facie case; instead, the plaintiff is merely required to allege facts to satisfy the elements of a cause of action created by that statute. *Jalmiran v. Alutiiq Commercial Enterprises, LLC,* 639 F. Supp. 3d 605 (E.D. Va. 2022).

Here, the Court erroneously overlooked Plaintiff's pleading for discrimination, prior to the October 8, 2020, performance review. Beginning in the complaint, Plaintiff factually lays out over eighteen (18) months of discriminatory actions he was subjected to. [JA0011-0012]. In August 2019, Plaintiff overheard degrading comments about himself and other division employees, while attending

an offsite event with Mr. Gondeck and Mr. Cichetti (division chiefs). [JA0011], [JA0014-0015]. Plaintiff understood these comments to have racial underpinnings. Plaintiff was appalled by the conversation and asked Mr. Gondeck, Mr. Cichetti, and the contractors to refrain from speaking about the division's performance. [JA0011], [JA0014-0015]. After this incident, Mr. Gondeck and Mr. Cichetti began to subject Plaintiff to discriminatory and retaliatory treatment. [JA0011], [JA0014-0015].

Following that incident, the discriminatory behavior expanded beyond comments about Plaintiff and his division employees. Approximately a week after the offsite incident, Mr. Gondeck approached and told Plaintiff he does not think Plaintiff would make it at NGA, or words to that effect. [JA0015]. Plaintiff inquired as to why. Mr. Gondeck said that it was because Plaintiff had been "wearing a suit with sneakers." [JA0015]. Later that day, Mr. Gondeck told Plaintiff that he would not have hired him, or words to that effect. [JA0015]. None of the commentary by Mr. Gondeck related to Plaintiff's character or work performance. [JA0015]. None of the commentary related to any work-place policy violations committed by Plaintiff. Instead, the commentary focused on isolating Plaintiff as an African American male. [JA0015].

Plaintiff outlined other actions by Mr. Godeck and Mr. Cichetti that led to the unlawful discrimination Plaintiff endured through the actions of the Defendant. [JA0015].

17

In or around September of 2019, Plaintiff met with Mr. Cichetti, and Mr. Cichetti showed Plaintiff a photo of his new AR-15 rifle. [JA0015]. Unprompted, Mr. Cichetti informed Plaintiff that he would not have any issues with people coming into his home. [JA0015]. Mr. Cichetti additionally shared a story about threatening an African American man with his gun after the man had walked into his yard. Mr. Cichetti also told Plaintiff that when he was young, a group of African American boys had beat him up and "left him for dead." [JA0015]. Mr. Cichetti stated that this had resulted in him viewing African Americans differently. [JA0015].

Around a month later, when Plaintiff was invited to a Halloween party in 2019, Plaintiff arrived at the party realizing he was the only person of his team invited to this Halloween party. [JA0016]. Plaintiff inquired about the rest of the team attending the party, and Mr. Cichetti stated, "he did not think members of the Privacy and Civil Liberties Division would feel comfortable about White people dressing up in drag, or words to that effect." [JA0016]. Almost all personnel who worked for Mr. Cichetti were at the party except the three (3) minority individuals who were not invited. [JA0016].

Thus, in viewing the evidence in the light most favorable to Mr. Reeves, he has met the burden of pleading his claim of race-based discrimination. The District Court erred in dismissing this Count in the dispositive motion phase of litigation.

II.    **The District Court erred granting Summary Judgment and dismissing Mr. Reeve's claim for retaliation. Viewing the evidence and drawing all reasonable inferences in a light most favorable to Mr. Reeves, the Defendant's Motion for Summary Judgment should have been denied.**

In granting the Motion for Summary Judgment, and dismissing Mr. Reeves' claim of retaliation, the District Court erred where it did not view the evidence and draw all reasonable inferences in the light most favorable to Mr. Reeves.

First, the District Court erred where it concluded that Reeves' August 2019 request to Mr. Cichetti and Mr. Gondeck to "refrain from discussing [his] division's performance," did not constitute protected activity. [JA1025]. Viewing the evidence and drawing all reasonable inferences from them, in the light most favorable to Mr. Reeves this ruling was clearly in error.

"Protected activities under Title VII include both participation and opposition activities." *McIver v. Bridgestone Ams., Inc*., 42 F.4th 398, 411 (4th Cir. 2022) (citing *Laughlin v. Metro. Washington Airports Auth*., 149 F.3d 253, 257 (4th Cir. 1998)). Opposition activities "need not be part of a formal proceeding." *Strothers v. City of Laurel*, 895 F.3d 317, 328 n.4 (4th Cir. 2018). Instead, "staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities" would constitute opposition activities protected under Title VII. *McIver*, 42 F.4th at 411 (internal citation omitted).

The Privacy and Civil Liberties Division where Mr. Reeves worked consisted of all ethnic minority employees, and all other divisions had only Caucasian

19

employees. [JA0985]. During a meeting between Mr. Reeves, Mr. Cichetti, and Mr. Gondeck in August 2019, Mr. Reeves observed his supervisors to be laughing and joking about his divisions' team members who were all ethnic minorities. [JA0985]. Mr. Reeves asked Mr. Cichetti, and Mr. Gondeck to refrain from discussing the divisions performance. [JA0985]. Shortly after that Mr. Reeves began experiencing adverse treatment from Mr. Cichetti and Mr. Gondeck. Viewing this evidence and drawing all reasonable inferences from them, in the light most favorable to Mr. Reeves this ruling was clearly in error. If this evidence is viewed in a light most favorable to Mr. Reeves, then the conclusion would have to be made that Mr. Cichetti and Mr. Gondeck construed Reeves' request as a complaint about discrimination or hostility in the workplace. Mr. Reeves' actions constitute "opposition activities", and therefore are protected activities.

Defendant relies on *Nnadozie v. Genesis HealthCare Corp.* for the premise that "complaints premised on nothing more than rude treatment by coworkers, callous behavior by one's supervisors … are not actionable under Title VII." 730 F. App'x 151, 161-162 (4th Cir. 2018). Mr. Reeves' case is distinguishable from *Nnadozie*. The "rude" treatment in *Nnadozie* amounted to a supervisor leaving "rude written messages (profanity) on [the Plaintiff's] paperwork." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306 (4th Cir. 2008). The Court's reliance on *Nnadozi* is misplaced. Mr. Reeves' experience was substantially greater than rude treatment.

Mr. Reeves and his entire team which was composed of ethnic minorities were denigrated by his supervisors.

Second, the Court concluded that Mr. Reeves established a *prima facie* case for his retaliation based on the filing of his informal EEOC complaint against Cichetti and Gondeck. [JA1025]. However, the Court further found that the Defendants asserted a legitimate nonretaliatory reason for the adverse employment actions taken against Reeves. [JA1028]. The Court then shifted the burden back to Mr. Reeves to present evidence sufficient to infer that the asserted reason was a pretext for retaliation and concluded that the record was absent sufficient evidence for that purpose. [JA1028]. The District Court erred in this conclusion. Viewing the evidence and drawing all reasonable inferences from them, in the light most favorable to Mr. Reeves, the Court's ruling that Reeves failed to present sufficient evidence to show pretext for retaliation was clearly erroneous.

When evaluating pretext, it is not within the courts purview to question whether the employer's proffered basis for the disputed action "was wise, fair, or even correct, ultimately, so long as it truly was the reason for" the action. *Ousley v. McDonald*, 648 F. App'x 346, 349 (4th Cir. 2016). In order to succeed at this stage, the plaintiff must "show both that the reason advanced was a sham and that the true reason was an impermissible one under the law." *Id.*

Evidence of pretext for retaliation against Mr. Reeves includes the following. Shortly after the August 2019 incident discussed above, Mr. Gondeck raised performance concerns about Reeves. [JA0288-0289]. Throughout 2020, Mr. Gondeck and Mr. Cichetti continued to build their pretextual case for retaliation against Mr. Reeves by documenting alleged performance issues against Mr. Reeves [JA0383-0389], drafting a "Memorandum for Record" in preparation of Mr. Reeves' termination, [JA505], having a mid-year review advising Mr. Reeves he was not meeting performance standards. [JA430-431]. All of this was pretext for retaliation that occurred based off of Mr. Reeves' complaint about his protected activity since August 2019.

Further evidence of pretext for retaliation against Mr. Reeves occurs after Mr. Cichetti and Mr. Gondeck became aware of the allegations Mr. Reeves raised in his EEO Complaint against them on or about August 27, 2020. In October 2020, Mr. Reeves received a final close-out performance review of "unacceptable" from Mr. Gondeck. [JA0533-0544]. On January 15, 2021, Mr. Reeves received notice of termination. [JA0717-0718]. These actions were pretext for retaliation that was occurring based off of Mr. Reeves' complaint about protected activity from August 2019 and for his the EEO Complaint that had recently been filed.

Viewing this evidence in a light most favorable to Mr. Reeves, and drawing all reasonable inferences from them, the Court could have reached a number of

conclusions where Mr. Reeves' case should have survived summary Judgment: (1) That the entirety of the alleged performance issues outlined over 2019 and 2020 and Mr. Reeves' termination were all pretext for retaliation for Mr. Reeves' comments in August 2019; and, (2) That Mr. Reeves' final close out performance review and termination were pretext for retaliation for Mr. Reeves EEOC Complaint.

Despite the contentions in the Complaint and record evincing reprisal by the Defendants, the District Court Judge refused to liberally construe the factual allegations of the complaint in the light most favorable to Mr. Reeves. Furthermore, the District Court Judge failed to acknowledge that there are numerous genuine issues of material facts in dispute Such a ruling by the District Court Judge is contrary to the relevant law at hand and the facts in the Complaint, is clearly erroneous, and should accordingly be reversed. In viewing the evidence and drawing all reasonable inferences from it in a light most favorable to Mr. Reeves, the Motion for Summary Judgment as to Mr. Reeves' claim for retaliation should have been denied.

**III.    The District Court erred granting Summary Judgment and dismissing Mr. Reeve's claim for hostile work environment. Viewing the evidence and drawing all reasonable inferences in a light most favorable to Mr. Reeves, the Defendant's Motion for Summary Judgment should have been denied.**

In granting the Motion for Summary Judgment, and dismissing Mr. Reeves' claim of hostile work environment, the District Court erred where it did not view the

evidence and draw all reasonable inferences in the light most favorable to Mr. Reeves.

The Court concluded that Mr. Reeves failed to present evidence sufficient to establish that he was subjected to conduct that was sufficiently pervasive and severe to constitute a hostile work environment, whether independently or in combination. [JA1031]. However, viewing the evidence and drawing all reasonable inferences from them, in the light most favorable to Mr. Reeves this ruling was clearly in error.

The severe or pervasive conduct that gives rise to a hostile work environment is assessed both subjectively and objectively. *McIver*, 42 F.4th at 407. The conduct must be "both objectively and subjectively hostile and abusive." *Id*. (internal citation omitted). When evaluating whether conduct is objectively hostile and abusive, courts will consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. (internal citation omitted).

In addition, the objective analysis "must focus on the events that the plaintiff personally experienced." *Id*. at 408. Moreover, the harasser's status is a "significant factor" to consider. *Id*. at 408 (internal citation omitted). "[A] supervisor's power and authority invests in his or her harassing conduct with a particular threatening character," and it follows that "harassment by a supervisor tends to be more serious,

24

while harassment by a co-equal is less serious." *Id*. at 408 (internal citation omitted). The "ultimate inquiry is whether the conduct is so 'extreme' that it 'amount[s] to a change in the terms and conditions of employment." *Id*. at 408.

First the Court found that Mr. Reeves, in his deposition, disclaimed his original allegation that in September 2019, Mr. Cichetti showed him an AR-15 in a racially threatening manner that created a hostile work environment. [JA1030]. However, Mr. Reeves' testimony was more nuanced than that. Mr. Reeves' full statement was that:

> He had just bought his – an AR-15 and we were in our meeting, our standard annual weekly meeting. And he said, you want to see it? And, again, my boss says he want to see it. You say okay.
>
> He goes to his emails. He shows me a picture on the screen, and then he commenced to tell me about his upbringing in New York. He had commenced to talk about  how he – well, first, he mentioned that if someone comes in his yard that the he doesn't have a to worry about that anymore with this AR-15. But then he mentioned that when he was upbringing in New York, there were some African American men or boys at the time who had jumped him, and he said, quote, left him for dead. And then he said after that, he looked at people differently
>
> [JA0147-0148].
>
> I believe him showing it was not motivated by race. I believe that once he stated that he was – what his incident happened and that he was, you know, looked at African American people different was motivated by race. Yeah. That statement. Yes.
>
> [JA0149].

Here, Mr. Reeves' testimony was that the combined act of showing him the picture of the AR-15 while recounting this story about being jumped by a group of African Americans, as well as telling him that he would not have a problem with people coming on his property, was in fact racially motivated. The Court partly based its decision on the fact that whereas Mr. Reeves' Complaint alleged that Mr. Cichetti shared a story about threatening an African American man with his gun after the man had walked into his yard, his deposition testimony was devoid of such a statement. Mr. Reeves' however was never asked that specific question. Viewing the evidence in a light most favorable to Mr. Reeves and drawing all reasonable inferences from them, Mr. Cichetti's actions created a hostile work environment.

The Court then reviewed several other allegations from Mr. Reeves that formed the basis of his hostile work environment claim, including "the exclusion of his team from the Halloween party, the discussions about his dress code violations (and the sticky notes commenting on his dress), his poor performance reviews, Gondeck's temperament in the February 2020 meeting, and the fact that Cichetti allegedly told him that he views African Americans differently." [JA1031]. The Court concluded that these incidents did not establish conduct that was sufficiently pervasive and severe to constitute a hostile work environment. [JA1031]. Viewing this evidence and drawing all reasonable inferences from the evidence in a light most

26

favorable to Mr. Reeves, these actions were severe and pervasive and amounted to a hostile work environment.

In October 2019, when Mr. Reeves team was excluded from the Halloween party, Mr. Cichetti told Mr. Reeves that he did not think members of the team, which consisted entirely of minorities, would feel comfortable about White people dressing up in drag and Mr. Reeves would because he went to college. [JA0079]. Almost all personnel who worked for Mr. Cichetti were at the party except the three (3) minority individuals who were not invited. [JA0079]. Viewing this evidence in a light most favorable to Mr. Reeves these actions and comments by Mr. Cichetti contributed to the hostile abusive environment experienced by Mr. Reeves.

In 2019, Mr. Gondeck told Mr. Reeves he wouldn't have hired him and he would not make it at NGA because he was "wearing a suit with sneakers," and "grownups don't wear sneakers." [JA0397]. On February 7, 2020, Mr. Gondeck and Mr. Cichetti criticized Mr. Reeves' decision to wear sneakers at work and told him that it was not professional. [JA0401]. Mr. Reeves wore sneakers to walk from his car to his office, where he kept dress shoes that he wore while he was at work. [JA0401]. Mr. Gondeck and Mr. Cichetti issued a new dress code policy. [JA0401]. This new dress code policy appeared to be targeted at Mr. Reeves. Viewing this evidence in a light most favorable to Mr. Reeves these actions and comments by Mr. Cichetti and Mr. Gondeck appear to have been targeted at Mr. Reeves based on a

stereotype that Black men wear sneakers and sneakers are not acceptable in the White workforce. This contributed to the hostile and abusive environment experienced by Mr. Reeves.

In a similar vein as the sneaker incident, Mr. Cichetti and Mr. Gondeck also inappropriately criticized Mr. Reeve's attire on more than one occasion (October 2019 and January 2020) by leaving notes on his desk saying, "Hot Mess Citation" and "All my pants are sassy." [JA0398-0399]. Viewing these incidents in a light most favorable to Mr. Reeves, it appears that Mr. Cichetti and Mr. Gondeck were using racially charged urban colloquialisms based on Mr. Reeves' race. This contributed to the hostile and abusive environment experienced by Mr. Reeves.

Mr. Reeves' negative performance reviews began shortly after Mr. Reeves complained to Mr. Cichetti and Mr. Gondeck about the way they were talking about his all-minority team in an improper manner. Viewing these negative performance reviews in a light most favorable to Mr. Reeves, these actions were in retaliation for Mr. Reeves' Complaint. This contributed to the hostile and abusive environment experienced by Mr. Reeves.

Mr. Reeves also relied on an incident on February 29, 2020, where during a meeting Mr. Gondeck became visibly enraged, was red in the face and began yelling and balling up his fist. [JA0400]. Viewing this incident in a light most favorable to

Mr. Reeves, and in the context of the other allegations, this action contributed to the hostile and abusive environment experienced by Mr. Reeves.

Finally, Mr. Reeves alleged, but the Court failed to consider incidents in November 2019 and February 2020, where Mr. Reeves was accused of mistreating contractors by Mr. Gondeck and Mr. Cichetti. [JA0399]. The types of actions alleged against Mr. Reeves by Mr. Gondeck and Mr. Cichetti are similar to historically negative stereotypes applied to Black men. Black men are historically referred to as being aggressive, intimidating, and angry. In these incidents Mr. Reeves contested the allegations and provided evidence contrary to the allegations. Viewing these incidents in a light most favorable to Mr. Reeves, and in the context of the other allegations, these actions were indicative of Mr. Cichetti and Mr. Godeck applying negative stereotypes to Mr. Reeves based on his race.  These actions contributed to the hostile and abusive environment experienced by Mr. Reeves.

Viewing the totality of the evidence presented and drawing all reasonable inferences from the evidence in a light most favorable to Mr. Reeves, Mr. Reeves has presented sufficient evidence to establish that he was subjected to conduct that was sufficiently pervasive and severe and constituted a hostile work environment, and Defendant's Motion for Summary Judgment should have been denied.

## CONCLUSION

Wherefore, for the reasons stated above, Appellant, Terrance Reeves, respectfully requests that this Honorable Court reverse the trial court's Orders dismissing Appellant's claim for discrimination and issuing an order of summary judgment for Appellant's claims for retaliation and hostile work environment and remand this case for further proceedings and trial on the merits.

## REQUEST FOR ORAL ARGUMENT

Appellant respectfully requests oral argument. Appellant believes that his case involves a legal issue concerning public interest. A Motion to Dismiss or Alternatively for Summary Judgment, is sought by defendants in the majority of race and national origin discrimination cases.  An Appellant's burden is "one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves,* 530 U.S. at 142 (2000).

However, the task of determining whether the evidence produced by an Appellant could be persuasive to a reasonable factfinder, without engaging in the weighing of evidence, presents continuing challenge that requires guidance from the Court.

For that reason, Appellant believes that oral argument would be helpful in this case.

Respectfully submitted,


By: <u>Andrew O. Clarke, Esq.</u>
163 Waterfront Street, Suite 440
National Harbor, MD 20745
Tel: 202-780-9144
Email: aclarke@districtlegalgroup.com
*Counsel for Plaintiff-Appellant*

Date: January 17, 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App.

P. 32(a)(7)(B) because this brief contains <u>6,970</u> words.

2.  This brief complies with the type face requirements of Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)

because this brief has been prepared in a mono-spaced type face using

Microsoft Word in 14 Times New Roman.

Respectfully submitted,

By: <u>Andrew O. Clarke, Esq.</u>
163 Waterfront Street, Suite 440
National Harbor, MD 20745
Tel: 202-780-9144
Email: aclarke@districtlegalgroup.com
*Counsel for Plaintiff-Appellant*

Date: January 17, 2025