**CASE NO. 24-1568**

---

**United States Court of Appeals for
The Fourth Circuit**

---

**TERRANCE REEVES,**

*Plaintiff-Appellant*

vs.

**LLOYD J. AUSTIN, III, SECRETARY U.S.
DEPARTMENT OF DEFENSE, ET. AL,**

*Defendant-Appellee.*

*On Appeal from the United States District Court
for the Eastern District of Virginia*

*Case No. 1:23-cv-00149 (Hon. Anthony J. Trenga, Judge)*

---

**REPLY BRIEF OF PLAINTIFF-APPELLANT**

---

> Andrew Omar Clarke
> District Legal Group, PLLC
> 163 Waterfront Street, Suite 440
> National Harbor, MD 20745
> Tel: 202-780-9144
> Email: aclarke@districtlegalgroup.com
> *Counsel for Plaintiff-Appellant -Appellant*

April 24, 2025

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................. iii

STATEMENT OF FACTS...................................................................................1

SUMMARY OF ARGUMENT.............................................................................8

STANDARD OF REVIEW..................................................................................9

REPLY TO APPELLEE BRIEF ........................................................................11

I.    Appellant's Reply Reaffirms that the District Court erred in granting Summary Judgment and dismissing Appellant's claim of retaliation. Viewing the evidence and drawing all reasonable inferences in a light most favorable to Appellant, the Appellee's Motion for Summary Judgment should have been denied .........................................................................11

II.   Appellant's Reply reaffirms that the District Court erred in granting Summary Judgment and dismissing Appellant's claim of hostile work environment. Viewing the evidence and drawing all reasonable inferences in a light most favorable to Appellant, the Appellee's Motion for Summary Judgment should have been denied .........................................................15

III.  Appellant's Reply reaffirms that the District Court erred in granting Appellee's Motion to Dismiss as to Appellant's claim of discrimination. Viewing the evidence and drawing all reasonable inferences in a light most favorable to Appellant, the Appellee's Motion to Dismiss should have been denied ....................................................................................20

CONCLUSION ...................................................................................................24

CERTIFICATE OF COMPLIANCE ..................................................................25

# TABLE OF AUTHORITIES

## Cases

*Alvarado v. Board of Trustees of Montgomery Community College*,
848 F.2d 457 (4th Cir.1988) …………………………………………………………..21

*Aka v. Washington Hosp. Ctr.*,
156 F.3d 1284 (D.C. Cir. 1998)..................................................................10

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ......................................................................10, 11

*Bing v. Brivo Sys., LLC*,
959 F.3d 605 (4th Cir. 2020) ..................................................................21

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...............................................................................10

*Cummings v. Dep't of the Navy*,
279 F.3d 1051 (D.C. Cir. 2002)..............................................................10

*Faragher v. City of Boca Raton*,
524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) ....................18,19

*Garnett v. Remedi Seniorcare of Virginia, LLC*,
892 F.3d 140 (4th Cir. 2018) ...................................................................9

*Ibanez v. Albemarle Cnty. Sch. Bd.*,
897 S.E.2d 300 (Va. Ct. App. 2024) .........................................16, 17, 19

*Jalmiran v. Alutiiq Commercial Enterprises, LLC*,
639 F. Supp. 3d 605 (E.D. Va. 2022) ...................................................21

*Jenkins v. McKeithen*,
395 U.S. 411 (1969) .................................................................................9

*McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*,
780 F.3d 582 (4th Cir. 2015) ...............................................................21

*McIver v. Bridgestone Ams., Inc.,*
 42 F.4th 398 (4th Cir. 2022) ........................................................12, 16, 19

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) .............................................................................21

*Ousley v. McDonald,*
648 F. App'x 346, 349 (4th Cir. 2016) ....................................................14

*Rasul v. Myers,*
512 F.3d 644 (D.C. Cir. 2008).................................................................10

*Reeves v. Sanderson Plumbing Prods., Inc.,*
530 U.S. 133 (2000) ...........................................................................10,11

*Strothers v. City of Laurel,*
895 F.3d 317 (4th Cir. 2018) ..................................................................12

*Swierkiewicz v. Sorema N.A.,*
534 U.S. 506 (2002) ..............................................................................21

## Other Authorities

Fed. R. Civ. P. 8 ..................................................................................10

Fed. R. Civ. P. 12(b)(6) .........................................................................9

Fed. R. Civ. P. 56(a) ............................................................................10

Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000 et seq. ("Title VII") .................................11, 12, 20, 21

**STATEMENT OF FACTS**

During the relevant time period alleged in his complaint, Terrance Reeves ("Mr. Reeves" or "Appellant" "Plaintiff-Appellant ") was the Chief MOCP, and Chief Privacy Officer ("CPO"), Pay Band 4, from July 2019 to January 29, 2021, in the NGA's MOC in Springfield, Virginia. Based upon his race and prior EEO activity, Plaintiff-Appellant was subjected to harassment and disparate treatment by his immediate supervisors, MOC Deputy Director (DD/MOC) Gregory A. Gondeck (Caucasian, male), and MOC Director (D/MOC) Kevin P. Cichetti (Caucasian, male). [JA0068].

Beginning on or about July 2019, through on or about January 29, 2021, Plaintiff-Appellant was subjected to race-based discrimination and harassment through bullying behavior, direct and indirect harassment, and the display of inappropriate pictures, creating a hostile work environment different than the treatment received by other division chiefs not of his race. [JA0014], [JA0889], [JA0982].

Plaintiff-Appellant began work at the NGA in July 2019 as the Chief of the Privacy and Civil Liberties Division with the Office of Mission Oversight and Compliance. [JA0014]. Plaintiff-Appellant had worked for the federal government for fifteen (15) years. Three (3) weeks after starting his position, Plaintiff-Appellant had a meeting with Mr. Gondeck and Mr. Cichetti to discuss the history of the

1

position and program. [JA0889], [JA0982]. During the meeting, Mr. Cichetti, and Mr. Gondeck informed Plaintiff-Appellant of an active EEOC case against them from a former employee (Non-Caucasian) and threatened that if Plaintiff-Appellant filed a case that they would fire him. [JA0889], [JA0982]. In addition to the information about the case, Mr. Cichetti describe the former lead of the program, an African American man, as an aggressive individual. [JA0889], [JA0982]. Mr. Cichetti stated that the two had a constant hostile relationship and forbid the Plaintiff-Appellant to communicate with either employee. [JA0982]. Mr. Cichetti provided additional statements on how if he could have the form lead, an African American man, fired and removed from the building. [JA0982]. Both stated that all they see is the current team members working on some excel spreadsheet that had no value. [JA0889], [JA0982].

In or around August 2019, Plaintiff-Appellant attended an offsite event with Mr. Gondeck and Mr. Cichetti, the division chiefs. [JA0988]. Mr. Gondeck, Mr. Cichetti, and all the other divisions were comprised mostly, if not all, Caucasian individuals. [JA0988]. Further, Plaintiff-Appellant overheard Mr. Gondeck and Mr. Cichetti, and the contractors speak about how they did not know what the employees of the Privacy and Civil Liberties Division did "outside of working on an excel spreadsheet." [JA0988]. In or around September 2019, Plaintiff-Appellant met with

Mr. Cichetti and Mr. Cichetti showed Plaintiff-Appellant a photo of his new AR-15 rifles. [JA0988], [JA0986].

Unprompted, and unprovoked, Mr. Cichetti shared a story about threatening an African American man with his gun after the man had walked into his yard. [JA0988], [JA0986]. Mr. Cichetti also told Plaintiff-Appellant that when he was young, a group of African American boys had beat him up and "left him for dead." [JA0988], [JA0986]. Mr. Cichetti stated that this had resulted in him viewing African Americans differently. [JA0988], [JA0986]. In or around October 2019, Mr. Gondeck and Mr. Cichetti informed Plaintiff-Appellant that they were concerned he was not meeting his performance objectives. [JA0989]. When Plaintiff-Appellant asked what he could improve on, he was told that his team was missing deadlines, the work product was poor, and communication between team members needed to improve. [JA0989] Plaintiff-Appellant explained that because he and his team were new, it would take time to acclimate. [JA0989].

In or around October 2019, Plaintiff-Appellant received an invitation from Mr. Cichetti to attend a Halloween party at his home. [JA0989]. Plaintiff-Appellant soon learned, however, that he was the only person on his team to be invited. [JA0989]. When Plaintiff-Appellant inquired with Mr. Cichetti if he planned on inviting the rest of the team, Mr. Cichetti stated that he did not think members of the Privacy and Civil Liberties Division would feel comfortable about White people

3

dressing up in drag, or words to that effect. [JA0989]. Almost all personnel who worked for Mr. Cichetti were at the party except the three (3) minority individuals who were not invited. [JA0989].

On or about February 7, 2020, Mr. Gondeck and Mr. Cichetti asked to meet with Plaintiff-Appellant. [JA0017], [JA0986], [JA0990], [JA0994]. At the meeting, Mr. Gondeck made an unprovoked remark that Plaintiff-Appellant 's choice to wear sneakers was not professional, despite the fact that Plaintiff-Appellant  adhered to the dress code during meetings and other formal settings. [JA0017], [JA0986], [JA0990], [JA0994]. Mr. Gondeck and Mr. Cichetti informed Plaintiff-Appellant of a new dress code. [JA0017], [JA0986], [JA0990], [JA0994]. When Plaintiff-Appellant  inquired as to whether the other (White) division chiefs would receive a similar meeting, Mr. Gondeck and Mr. Cichetti stated that the meeting was specific to Plaintiff-Appellant. [JA0017], [JA0986], [JA0990], [JA0994]. Again Plaintiff-Appellant was the only African American present during this conversation. After the meeting, the new dress code was emailed by Mr. Cichetti. [JA0017], [JA0986], [JA0990], [JA0994].

On or about February 9, 2020, Mr. Gondeck and Mr. Cichetti held another meeting with Plaintiff-Appellant. [JA0986]. At this meeting Plaintiff-Appellant  was informed that a contractor on his team had put in her two weeks' notice. [JA0986]. Plaintiff-Appellant was further informed that this was the second contractor who

had left "because of" Plaintiff-Appellant. [JA0986]. Plaintiff-Appellant was confused as the contractor informed the Plaintiff-Appellant of her decision to look for federal employment and get out of the contracting role [JA0986]. When Plaintiff-Appellant asked for confirmation that the contractor had stated Plaintiff-Appellant was the reason for her leaving, Mr. Gondeck began to yell and ball up his fists and hit aggressively on the table in front of the Plaintiff-Appellant. [JA0986]. At this point, Plaintiff-Appellant became frightened by the aggression Mr. Gondeck was displaying, requested to be allowed to leave the meeting, and decided he would begin staying away from Mr. Gondeck for fear of his life. [JA0986]. The following day, the Plaintiff-Appellant informed the Agency's Executive Director's Chief of Staff of the incident and was encouraged to file an informal Complaint. [JA0986].

On or about May 29, 2020, Plaintiff-Appellant had his scheduled midpoint review. [JA0017], [JA0990]. Contrary to practice and procedure, however, Mr. Cichetti was present for the review. [JA0017], [JA0990]. When Plaintiff-Appellant inquired as to whether Mr. Cichetti was present for all Division Chiefs' reviews, Mr. Gondeck stated that Mr. Cichetti was only attending Plaintiff-Appellant's review. [JA0017], [JA0990]. During Plaintiff-Appellant's midpoint review, Mr. Cichetti began to yell that he has had right to be in the meeting. Plaintiff-Appellant asked for a third party in attendance due to the fear of Mr. Gondeck. On or about July 28, 2020, Plaintiff-Appellant reported the aggression incident to the NGA's Diversity

and Inclusion Office. [JA0017], [JA0990]. Plaintiff-Appellant informed them of the disparate treatment he was subjected to by Mr. Gondeck and Mr. Cichetti and the hostile work environment that resulted. [JA0017], [JA0990]. Plaintiff-Appellant felt that submitting a formal complaint or entering into an alternative dispute resolution proceeding would make his situation worse, and so he chose to wait longer before filing a formal Complaint. [JA0017], [JA0990].

Finally, on or about October 5, 2020, Plaintiff-Appellant filed a formal complaint against Mr. Gondeck and Mr. Cichetti for their discriminatory treatment. [JA0069]. Plaintiff-Appellant previously made an informal complaint on August 7, 2020. [JA0069]. Shortly after filing the complaint, and at the end of Plaintiff-Appellant's performance period, he provided Mr. Gondeck with his self-assessment that included various accomplishments and projects that had succeeded throughout the year. [JA0069]. On or about October 28, 2020, Plaintiff-Appellant received his FY20 Final Close Out performance rating from Mr. Gondeck that rated Plaintiff-Appellant as a "1.0 – Unacceptable" despite the fact that each member of Plaintiff-Appellant's team had received a rating of "Excellent." [JA0090], [JA0244-0245]. Based on reason, belief, and timing, this was Mr. Gondeck and Mr. Cichetti's retaliation for Plaintiff-Appellant's EEO complaint submitted earlier that month. [JA0090], [JA0244-0245]. Plaintiff-Appellant immediately reported the retaliation to the EEO office. [JA0090], [JA0244-0245].

6

On or about January 29, 2021, Plaintiff-Appellant's nephew received an overnight letter that served as a Notice of Termination During Trial Period dated January 15, 2021. [JA0018].

The termination was sent via overnight mail and was dated January 28, 2021. [JA0018]. The termination was dated the same day that Plaintiff-Appellant informed Defendant that he would be accepting a new job with the Department of Veterans Affairs. [JA0018]. The Department of Veterans Affairs emailed NGA requesting the agency to provide documents to process the Plaintiff-Appellant for the new position. [JA0018]. Based on reason, belief, and timing, this was Mr. Gondeck and Mr. Cichetti's retaliation for Plaintiff-Appellant's ongoing EEO activity and advocacy. [JA0018]. All of the above instances are evidence of the consistent discriminatory, harassing, and retaliatory treatment that Plaintiff-Appellant faced at the hands of Defendants' representatives for no reason other than his protected characteristics. [JA0019], [JA0198]. The more Plaintiff-Appellant spoke up about the treatment he was facing, the more he was subjected to a hostile work environment and retaliation. [JA0019], [JA0198].

In contrast to Plaintiff-Appellant, other employees not of his protected categories have received more favorable treatment and have not been subjected to the same harassment and discrimination: Ms. Deborah Pyle (Caucasian, White, female) was a Band 5 employee working under Mr. Cichetti as well. [JA0197]. In

7

FY20, Ms. Pyle had a limited workload and yet no administrative actions were taken against her. [JA0198]. She also had an encounter with contractor Mike Bietsch which only resulted in an administrative notice. [JA0198]. Further, from March 2020 to January 2021, the majority of Ms. Pyle's weekly activity reports highlighted reading books and research while Plaintiff-Appellant's weekly reports highlighted achievements and contributions to the program. [JA0198]. Ms. Pyle was not subjected to the same performance scrutiny as Plaintiff-Appellant. [JA0198]. From March 2020 to September 2020, Plaintiff-Appellant and his team were the only team producing work during the start of the pandemic. [JA0198]. In January 2020, Plaintiff-Appellant moved all of the unclassified documents to a location that would allow his team to work virtually. [JA0198]. This effort resulted in a verbal reprimand from Mr. Gongdeck. [JA0198]. However, in March 2020, the COVID-19 pandemic resulted in the necessity for virtual work. Plaintiff-Appellant's plan for his team was then implemented Agency wide. [JA0198].

## **SUMMARY OF ARGUMENT**

Appellant has appealed the District Court's ruling on the motion to dismiss for discrimination, and on the motion for summary judgment for retaliation and hostile work environment. Today, Appellant reaffirms his argument from his opening brief. As stated in his opening brief, Appellant has met the burden of stating a claim and proving a prima facie case for discrimination. Appellant has successfully

8

met his burden for retaliation and hostile work environment. Alas, the lower Court failed to view the evidence and draw all reasonable inferences in a light most favorable to Appellant. The Court should have denied Defendant's Motion to Dismiss and Motion for Summary Judgment. Because of error under the law, Plaintiff-Appellant respectfully request this Court to reverse and remand the previous summary judgment Order.

**STANDARD OF REVIEW**

### I.     Motion to Dismiss

The Court of Appeals' review of a grant of a motion to dismiss for failure to state a claim is reviewed de novo. *Garnett v. Remedi Seniorcare of Virginia, LLC*, 892 F.3d 140, 142 (4th Cir. 2018). A complaint attacked by a Rule12(b)(6) motion to dismiss will survive if it contains "enough facts to state claim to relief that is plausibility when the Plaintiff-Appellant pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. A court must accept the material facts alleged in the complaint as true and in the light most favorable to the Plaintiff-Appellant. *Id*. at 679.

In reviewing a motion to dismiss, "the claims must be construed in the light most favorable to the non-moving party and its allegations take as true." *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969). Moreover, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short

and plain statement of the claim showing that the pleader is entitled to relief." *Fed R. Civ. P. 8.*

## II.  Summary Judgment

The Court of Appeals review of a grant of summary judgment is *de novo*, applying the same standard that the District Court was required to apply. *Rasul v. Myers*, 512 F.3d 644 (D.C. Cir. 2008) ("We review the district court's legal conclusions de novo.") (*citing Cummings v. Dep't of the Navy*, 279 F.3d 1051,1053 (D.C. Cir. 2002)). Summary judgment is warranted if, from the totality of the evidence, it appears that no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C. Cir. 1998). The Court must view the evidence, draw all reasonable inferences therefrom, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Neither the District nor the Court of Appeals may resolve disputed facts, nor weigh the evidence, nor make determinations of credibility. *Reeves v. Sanderson Plumbing*

*Prods., Inc.,* 530 U.S. 133, 150 (2000). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ARGUMENT

I.   **Appellant's Reply reaffirms that the District Court erred in granting Summary Judgment and dismissing Appellant's claim of retaliation. Viewing the evidence and drawing all reasonable inferences in a light most favorable to Appellant, the Appellee's Motion for Summary Judgment should have been denied.**

This reply brief reinforces the argument Mr. Reeves provided in its opening brief. In granting the Motion for Summary Judgment, and dismissing Mr. Reeves' claim of retaliation, the District Court erred where it did not view the evidence and draw all reasonable inferences in the light most favorable to Mr. Reeves. The District Court erred where it concluded that Reeves' August 2019 request to Mr. Cichetti and Mr. Gondeck to "refrain from discussing [his] division's performance," did not constitute protected activity. [JA1025]. Appellee's Opposition Brief is nothing more than an attempt to improperly reduce the threshold of protected activity provided by the law. [Doc. 30] at 34.

In the Appellee's opposition brief, counsel states that the "only materially adverse actions after Plaintiff-Appellant's June 2020 protected activity are his October 2020 performance evaluation and January 2021 removal." *Id.* at 36. This is

11

simply not true. Under the law, "Protected activities under Title VII include both participation and opposition activities." *McIver v. Bridgestone Ams., Inc.*, 42 F.4th 398, 411 (4th Cir. 2022). Opposition activities "need not be part of a formal proceeding." *Strothers v. City of Laurel*, 895 F.3d 317, 328 n.4 (4th Cir. 2018). Instead, "staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities" constitutes opposition activities protected under Title VII. *McIver v. Bridgestone Ams., Inc.*, 42 F.4th 398, 411 (4th Cir. 2022).

The Privacy and Civil Liberties Division where Mr. Reeves worked consisted of all ethnic minority employees, and all other divisions had only Caucasian employees. [JA0985]. During a meeting between Mr. Reeves, Mr. Cichetti, and Mr. Gondeck in August 2019, Mr. Reeves observed his supervisors to be laughing and joking about his division's team members, who were all ethnic minorities. [JA0985]. Mr. Reeves asked Mr. Cichetti, and Mr. Gondeck to refrain from discussing the divisions performance. [JA0985]. Shortly after that Mr. Reeves began experiencing adverse treatment from Mr. Cichetti and Mr. Gondeck. Viewing this evidence and drawing all reasonable inferences from them, in the light most favorable to Mr. Reeves this ruling was clearly in error. If this evidence is viewed in a light most favorable to Mr. Reeves, then the conclusion would have to be made that Mr. Cichetti and Mr. Gondeck construed Reeves' request as a complaint about

12

discrimination or hostility in the workplace. Mr. Reeves' actions constitute "opposition activities" and therefore are protected activities.

### A. Appellant has presented sufficient evidence of pretext for retaliation

Appellee asserts that the Appellant is asking this Court "to jump from the mere existence of criticism to the conclusion that the criticism was racially motivated." *Id.* at 35. Defendant argues that it has established legitimate, non-retaliatory reasons for the actions, and that Plaintiff cannot show that those reasons are pretextual. Again, this claim falls under scrutiny.

Evidence of pretext for retaliation against Mr. Reeves includes the following. Shortly after the August 2019 incident discussed above, Mr. Gondeck raised performance concerns about Reeves. [JA0288-0289]. Throughout 2020, Mr. Gondeck and Mr. Cichetti continued to build their pretextual case for retaliation against Mr. Reeves by documenting alleged performance issues against Mr. Reeves [JA0383-0389], drafting a "Memorandum for Record" in preparation of Mr. Reeves' termination, [JA505], having a mid-year review advising Mr. Reeves he was not meeting performance standards. [JA430-431]. All of this was pretext for retaliation that occurred based off of Mr. Reeves' complaint about his protected activity since August 2019.

When evaluating pretext, it is not within the court's purview to question whether the employer's proffered basis for the disputed action "was wise, fair, or even correct, ultimately, so long as it truly was the reason for" the action. *Ousley v. McDonald*, 648 F. App'x 346, 349 (4th Cir. 2016). In order to succeed at this stage, the Plaintiff-Appellant  must "show both that the reason advanced was a sham and that the true reason was an impermissible one under the law." *Id.* Evidence of pretext for retaliation against Mr. Reeves occurs after Mr. Cichetti and Mr. Gondeck became aware of the allegations Mr. Reeves raised in his EEO Complaint against them on or about August 27, 2020. In October 2020, Mr. Reeves received a final close-out performance review of "unacceptable" from Mr. Gondeck. [JA0533-0544]. On January 15, 2021, Mr. Reeves received notice of termination. [JA0717-0718].

These actions were pretext for retaliation that was occurring based off of Mr. Reeves' complaint about protected activity from August 2019, and for his the EEO Complaint that had recently been filed. Appellee asks this Court to focus on the quantity of the information provided by the Plaintiff-Appellant, instead of the quality of evidence to satisfy the elements under the law. *Id.* at 43. The Court could have reached a number of conclusions where Mr. Reeves' case should have survived summary Judgment: (1) That the entirety of the alleged performance issues outlined over 2019 and 2020 and Mr. Reeves' termination were all pretext for retaliation for Mr. Reeves' comments in August 2019; and (2) That Mr. Reeves' final close out

performance review and termination were pretext for retaliation for Mr. Reeves EEOC Complaint.

Despite the contentions in the Complaint and record evincing reprisal by the Defendants, the District Court Judge refused to liberally construe the factual allegations of the complaint in the light most favorable to Mr. Reeves. Furthermore, the District Court Judge failed to acknowledge that there are numerous genuine issues of material facts in dispute. Such a ruling by the District Court Judge is contrary to the relevant law at hand and the facts in the Complaint, is clearly erroneous, and should accordingly be reversed. In viewing the evidence and drawing all reasonable inferences from it in a light most favorable to Mr. Reeves, the Motion for Summary Judgment as to Mr. Reeves' claim for retaliation should have been denied.

**II.    Appellant's Reply reaffirms that the District Court erred in granting Summary Judgment and dismissing Appellant's claim of hostile work environment. Viewing the evidence and drawing all reasonable inferences in a light most favorable to Appellant, the Appellee's Motion for Summary Judgment should have been denied.**

Appellee's request for the Court to dismiss Mr. Reeves claim for hostile work, due to lack of legal support. This request is improper and misguiding. In viewing the evidence and drawing all reasonable inferences in a light most favorable to Mr. Reeves, the Defendant's Motion for Summary Judgment as to hostile work

15

environment should have been denied. The Fourth Circuit has ruled that severe or pervasive conduct giving rise to a hostile work environment is assessed both subjectively and objectively. *McIver v. Bridgestone Ams., Inc*., 42 F.4th 398 (4th Cir. 2022). The conduct must be "both objectively and subjectively hostile and abusive." *McIver*, 42 F.4th at 407. *Id*. When evaluating whether conduct is objectively hostile and abusive, courts will consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*.

The Fourth Circuit and Virginia Courts has previously ruled on the racial jokes and display of weapons as pervasive and severe conduct under the law. In *Ibanez*, the Plaintiff sued regarding "materials used by Defendants explicitly promote race-based discrimination" and that "the curriculum itself stereotypes and denigrates students based on their race," creating a "racially hostile educational environment." *Ibanez v. Albemarle Cnty. Sch. Bd*., 897 S.E.2d 300 (Va. Ct. App. 2024). Plaintiff in the case alleged that the "inculcation of racial stereotypes, denigrating and hostile

16

characterization of students based on race and practice of treating students differently based on race" is "differential treatment." *Id*. The Court emphasized that both subjective and objective hostility must be demonstrated, and the environment must be permeated with discriminatory intimidation, ridicule, and insult. *Id*.

Here, not only were the subjective and objective hostility elements met, Mr. Mr. Gondeck and Mr. Cichetti both permeated the workplace for the discriminatory environment they created. Beginning with the meeting in September 2019, the facts show that objectively, the average person would feel fear or safety, or at least tension when listening to their supervisor brag about owning automatic weapon.[JA1030]. Furthermore, when the reason for owning the weapon is subjected to racial bias, this is the permeating behavior the Court in Ibanez spoke of. [JA1030] Non-white coworkers, in the September 2019 meeting, did not have to hear about how their boss feels secure with an AR-15, while looking at "African American differently." [JA0149].

Courts determine "whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Mr. Reeves through evidence has shown threats, humiliation, and offensive behavior all on behalf the Defendant. Mr. Reeves, in his deposition, disclaimed his original allegation that in September 2019, Mr. Cichetti showed him an AR-15 in a racially threatening manner that created a hostile work environment. [JA1030]. However, Mr. Reeves' testimony was more nuanced than that. Mr. Reeves' full statement was as follows:

> He had just bought his - an AR-15 and we were in our meeting, our standard annual weekly meeting. And he said, "You want to see it? And, again, my boss says he want to see it. You say okay.

> He goes to his emails. He shows me a picture on the screen, and then he commenced to tell me about his upbringing in New York. He had commenced to talk about how he – well, first, he mentioned that if someone comes in his yard that the he doesn't have a to worry about that anymore with this AR-15. But then he mentioned that when he was upbringing in New York, there were some African American men or boys at the time who had jumped him, and he said, quote, left him for dead. And then he said after that, he looked at people differently [JA0147-0148].

> I believe him showing it was not motivated by race. I believe that once he stated that he was – what his incident happened and that he was, you know, looked at African American people different was motivated by race. Yeah. That statement. Yes. [JA0149].

18

Objectively, this Court and Virginia Courts have addressed that a single act can constitute abusive conduct if it is severe. Mr. Reeves' negative performance reviews began shortly after Mr. Reeves complained to Mr. Cichetti and Mr. Gondeck about the way they were talking about his all-minority team in an improper manner. Viewing these negative performance reviews in a light most favorable to Mr. Reeves, these actions were in retaliation for Mr. Reeves' Complaint. This contributed to the hostile and abusive environment experienced by Mr. Reeves. Mr. Reeves also relied on an incident on February 29, 2020, where during a meeting Mr. Gondeck became visibly enraged, was red in the face and began yelling and balling up his fist. [JA0400]. Viewing this incident in a light most favorable to Mr. Reeves, and in the context of the other allegations, this further contributed to the hostile and abusive environment experienced by Mr. Reeves as outlined by the and *Faragher*, *Ibanez, and McIver* Courts.

Finally, Mr. Reeves alleged, but the Court failed to consider incidents in November 2019 and February 2020, where Mr. Reeves was accused of mistreating contractors by Mr. Gondeck and Mr. Cichetti. [JA0399]. The types of actions alleged against Mr. Reeves by Mr. Gondeck and Mr. Cichetti are similar to historically negative stereotypes applied to Black men. Black men are historically referred to as being aggressive, intimidating, and angry. In these incidents Mr. Reeves contested the allegations and provided evidence contrary to the allegations.

Viewing these incidents in a light most favorable to Mr. Reeves, and in the context of the other allegations, these actions were indicative of Mr. Cichetti and Mr. Godeck applying negative stereotypes to Mr. Reeves based on his race. These actions contributed to the hostile and abusive environment experienced by Mr. Reeves. Mr. Reeves has presented sufficient evidence to establish that he was subjected to conduct that was sufficiently pervasive and severe to constitute a hostile work environment. Appellee's Motion for Summary Judgment should have been denied.

**III.    Appellant's Reply reaffirms that the District Court erred in granting Appellee's Motion to Dismiss as to Appellant's claim of discrimination. Viewing the evidence and drawing all reasonable inferences in a light most favorable to Appellant, the Appellee's Motion to Dismiss should have been denied.**

Appellee argues that the District Court correctly held that Plaintiff's complaint failed to allege a plausible discrete-act race discrimination claim. Appellee's attempt to dismiss Mr. Reeves' protected activity fails under further review.

In viewing the evidence and drawing all reasonable inferences in a light most favorable to Mr. Reeves, the Defendant's Motion to Dismiss on the claim of discrimination should have been denied. In order to establish a prima facie case for discrimination under Title VII a claimant must show that: (1) he belongs to a protected class; (2) he was performing according to his employer's legitimate

expectations; (3) he suffered an adverse employment action; and (4) other employees with qualifications similar to his own were treated more favorably. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)." At the motion to dismiss stage, an employment discrimination Plaintiff-Appellant is not required to plead a prima facie case. See *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616-17 (4th Cir. 2020) (citing *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

Appellee attempts to raise the threshold for Appellant's claim that does not exist under the law. [Doc. 30] at 57-58. Plaintiff-Appellant is merely "required to allege facts to satisfy the elements of a cause of action created by [Title VII]." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin*., 780 F.3d 582, 585 (4th Cir. 2015). The purposes of this requirement includes putting the charged party on notice of the complaint and allowing the EEOC to attempt reconciliation. *See Alvarado v. Board of Trustees of Montgomery Community College*, 848 F.2d 457, 460 (4th Cir.1988). At the motion to dismiss stage, a Title VII employment discrimination Plaintiff-Appellant is not required to plead a prima facie case; instead, the Plaintiff-Appellant is merely required to allege facts to satisfy the elements of a cause of action created by that statute. *Jalmiran v. Alutiiq Commercial Enterprises, LLC,* 639 F. Supp. 3d 605 (E.D.Va. 2022).

The lower Court erroneously overlooked Plaintiff-Appellant's pleading for discrimination, prior to the October 8, 2020, performance review. Appellee incorrectly argues that Appellant has not alleged any nexus between the alleged discrimination and the adverse action, Doc. At 56.

Mr. Reeves lays out the discriminatory acts, and Defendant's pretextual discrete acts in the following: Beginning in the complaint, Plaintiff-Appellant factually lays out over eighteen (18) months of discriminatory actions he was subjected to. [JA0011-0012]. In August 2019, Plaintiff-Appellant overheard degrading comments about himself and other division employees, while attending an offsite event with Mr. Gondeck and Mr. Cichetti (division chiefs). [JA0011], [JA0014-0015]. Plaintiff-Appellant understood these comments to have racial underpinnings. Plaintiff-Appellant was appalled by the conversation and asked Mr. Gondeck, Mr. Cichetti, and the contractors to refrain from speaking about the division's performance. [JA0011], [JA0014-0015]. After this incident, Mr. Gondeck and Mr. Cichetti began to subject Plaintiff-Appellant to discriminatory and retaliatory treatment. [JA0011], [JA0014-0015]. In or around September of 2019, Plaintiff-Appellant met with Mr. Cichetti, and Mr. Cichetti showed Plaintiff-Appellant a photo of his new AR-15 rifle. [JA0015]. Unprompted, Mr. Cichetti informed Plaintiff-Appellant that he would not have any issues with people coming into his home. [JA0015]. Mr. Cichetti additionally shared a story about threatening

an African American man with his gun after the man had walked into his yard. Mr. Cichetti also told Plaintiff-Appellant that when he was young, a group of African American boys had beat him up and "left him for dead." [JA0015]. Mr. Cichetti stated that this had resulted in him viewing African Americans differently. [JA0015]. Around a month later, when Plaintiff-Appellant was invited to a Halloween party in 2019, Plaintiff-Appellant arrived at the party realizing he was the only person of his team invited to this Halloween party. [JA0016]. Plaintiff-Appellant inquired about the rest of the team attending the party, and Mr. Cichetti stated, "he did not think members of the Privacy and Civil Liberties Division would feel comfortable about White people dressing up in drag, or words to that effect." [JA0016]. Almost all personnel who worked for Mr. Cichetti were at the party except the three (3) minority individuals who were not invited. [JA0016].

These facts are contrary Appellee's argument that there is a "lack of germane support" or "lack of nexus" to support Appellant's claims. Thus, in viewing the evidence in the light most favorable to Mr. Reeves, he has met the burden of pleading his claim of race-based discrimination. The District Court erred in dismissing this Count in the dispositive motion phase of litigation.

## <u>CONCLUSION</u>

Wherefore, for the reasons stated above and throughout his initial brief, Plaintiff-Appellant, Terrance Reeves, respectfully requests that this Honorable Court reverse the trial court's Orders dismissing Appellant's claim for discrimination and issuing an order of summary judgment for Appellant's claims for retaliation and hostile work environment and remand this case for further proceedings and trial on the merits.

Respectfully submitted,

By: <u>Andrew O. Clarke, Esq.</u>
163 Waterfront Street, Suite 440
National Harbor, MD 20745
Tel: 202-780-9144
Email: aclarke@districtlegalgroup.com
*Counsel for Plaintiff-Appellant -Appellant*

Date: April 24, 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains <u>5,292</u> words.

2.    This brief complies with the type face requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a mono-spaced type face using Microsoft Word in 14 Times New Roman.

Respectfully submitted,

By: <u>Andrew O. Clarke, Esq.</u>
163 Waterfront Street, Suite 440
National Harbor, MD 20745
Tel: 202-780-9144
Email: aclarke@districtlegalgroup.com
*Counsel for Plaintiff-Appellant -Appellant*

Date: April 24, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 24, 2025, a true copy of the foregoing was electronically filed and served on all Counsel for the Defendant-Appellee via CM/ECF.

*/s/ Andrew O. Clarke*
Counsel for Plaintiff-Appellant
